# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1796

_____

Jerry Lee Berry, Jr.,        *
                *
     Appellant,      *
                * Appeal from the United States
  v.             * District Court for the Southern
                * District of Iowa.
United States of America,    *
                *
     Appellee.      *

_____

Submitted:  April 19, 2002

Filed:  June 4, 2002

_____

Before HANSEN, Chief Judge, McMILLIAN and MORRIS SHEPPARD ARNOLD,
  Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

The government charged Jerry Berry with conspiring to distribute crack cocaine in violation of 21 U.S.C. § 846. Mr. Berry pleaded guilty, and the district court[1] sentenced him to 188 months in prison. Mr. Berry then filed a motion under 28 U.S.C. § 2255 to set his conviction aside because his counsel's prior representation of potential witnesses created a conflict of interest that prevented counsel from

_____

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

providing effective assistance when Mr. Berry pleaded guilty and at his sentencing. The district court denied Mr. Berry's motion, and Mr. Berry appealed. We affirm.

I.

The sixth amendment provides that a criminal defendant shall have the right to "the Assistance of Counsel for his defence." Generally, a defendant claiming a violation of the sixth amendment must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Prejudice is not required, however, if the defendant can show that his or her attorney had an actual conflict of interest. *See Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980). Rather, the appropriate question is whether a conflict of interest "adversely affect[ed]" the adequacy of a defendant's representation, *Caban v. United States*, 281 F.3d 778, 786 (8th Cir. 2002), or whether the "conflict adversely affected the voluntary nature of the guilty plea entered," *Thomas v. Folz*, 818 F.2d 476, 480 (6th Cir. 1987), *cert. denied*, 484 U.S. 870 (1987).

We have held that the "mere fact that a trial lawyer had previously represented a prosecution witness" is not sufficient for a showing of an actual conflict; the conflict must be "demonstrable," not merely abstract or a theoretical possibility, *United States v. Flynn*, 87 F.3d 996, 1001 (8th Cir. 1996). In this case, the district court found that there was no actual conflict because Mr. Berry never went to trial, and his attorney, Ronald Wheeler, never had to cross-examine Freddie Clark (Freddie) or Perry Clark (Perry), his former clients.

Although the matter is not entirely free from doubt, we believe that Mr. Wheeler had an "actual conflict" in this case because he had a demonstrable interest in avoiding taking Mr. Berry's case to trial. *See, e.g. Lace v. United States*, 736 F.2d 48, 50 (2d Cir. 1984) (*per curiam*). Mr. Wheeler explicitly told Mr. Berry that he could not take the case to trial, and this statement, in our judgement, is

evidence that he had an actual conflict of interest in advising Mr. Berry whether or not he should plead guilty.

We believe nevertheless that it would be unreasonable to conclude on this record that Mr. Wheeler's conflict adversely affected his representation of Mr. Berry during the time that Mr. Berry was deciding whether to enter a plea of guilty. Mr. Wheeler's advice to Mr. Berry that he would face overwhelming odds at trial and hence should plead guilty was solidly grounded because it was based on Mr. Wheeler's discussions with the assistant United States attorney, who told him that fifteen individuals were prepared to testify against Mr. Berry. As for Mr. Berry's complaint that Mr. Wheeler did not share with him the details of Freddie and Perry's prospective testimony, no other attorney would even have had access to this privileged information. In short, we are convinced that Mr. Wheeler's conflict made no difference to the quality of his performance as Mr. Berry's attorney during the guilt phase. *Cf. Caban*, 281 F.3d at 785-86. It is our view that, absent a conflict, not only would Mr. Berry in all likelihood have pleaded guilty, which means that there was no prejudice, but that a reasonable attorney would have given Mr. Berry the very same advice, which means that there was no adverse effect. *See id*; *cf. Thomas*, 818 F.2d at 483.

There is also insufficient evidence that Mr. Wheeler's conflict adversely affected the voluntariness of Mr. Berry's plea. We think it important that Mr. Wheeler did not apply any significant pressure on Mr. Berry. It is true that Mr. Wheeler testified at the evidentiary hearing on Mr. Berry's motion that informing Mr. Berry of his inability to go to trial may "possibly have" created pressure from "the standpoint that if he wanted me to remain on the case he would have to agree to a plea agreement." But any implicit pressure is, in our judgment, diluted because Mr. Berry was free to request the court to appoint another attorney to represent him at trial, there were no significant impediments to his doing so, and Mr. Wheeler's advice to plead guilty was reasonable.

-3-

Finally, Mr. Berry claims that the district court had a duty to inquire into the propriety of Mr. Wheeler's representation because it reasonably should have known that Mr. Wheeler had a conflict of interest. *See Wood v. Georgia*, 450 U.S.261, 272-73 (1981). While the district court acknowledged that it would have been better if it had conducted an inquiry to ensure Mr. Berry knew about the conflicts, we agree with its conclusion that the conflict was not "sufficiently apparent" to impose upon it a duty to do so. Whereas in *Wood*, 450 U.S. at 265 n.5, the state's solicitor alerted the court of a possible conflict, no one alerted the court of any conflict in Mr. Berry's case. We acknowledge that the court had a kind of notice of the conflict through events that occurred six months before Mr. Berry's plea, when, in a different case, Mr. Wheeler had disclosed that he represented Freddie and Perry in previous criminal proceedings. But we do not think that the court can reasonably be charged with a duty to keep track of the conflicts of every practitioner appearing before it. In any case, even if the court had an affirmative duty to inquire, which we do not think it did, its failure to do so does not make for an automatic reversal. *See Mickens v. Taylor*, 122 S. Ct. 1237, 1243-45 (2002). The relevant question remains whether the conflict had an "adverse effect" on Mr. Wheeler's representation, and, as we have already explained, it did not.

## II.

Mr. Berry also claims that Mr. Wheeler had an "actual conflict" that adversely affected his representation during sentencing. We agree with Mr. Berry that Mr. Wheeler's demonstrable interest in avoiding a sentencing hearing because of the possibility that Freddie and Perry might testify there requires a finding that Mr. Wheeler had an actual conflict.

We do not believe, however, that this record could support a finding that Mr. Wheeler's conflict adversely affected his representation of Mr. Berry during sentencing. According to the original presentence investigation report, which was based largely on Lydia Merrett's grand jury testimony, Mr. Berry was responsible for

1.16 kilograms of crack, for sentencing purposes, and he thus faced the prospect of a sentencing range of 235 months to 293 months. Mr. Wheeler advised him to acknowledge responsibility for 150 grams to 500 grams of crack, which lowered the sentencing range to 188 to 235 months. We believe that Mr. Wheeler's advice that Mr. Berry should accept the proffered arrangement was more than reasonable, and evidently unaffected by any ulterior consideration.

Mr. Berry challenges that inference by pointing out that he privately told Mr. Wheeler that Ms. Merrett was not credible. But the district court found on a sufficient record that Mr. Wheeler in fact raised Mr. Berry's objections during his negotiations with the prosecutor, and we therefore believe that in this aspect of the case Mr. Wheeler did not in any way compromise his client's interests.

Mr. Berry also claims that his testimony at the evidentiary hearing that "he always had a problem with the grams," supports a conclusion that Mr. Wheeler's advice was unreasonable. But this testimony gives us no indication of what Mr. Berry told Mr. Wheeler during the negotiations or how strong the case against Mr. Berry actually was. We recognize that the amount of drugs attributable to Mr. Berry in the proffered agreement was, ultimately, based in large part upon information that Freddie and Perry were willing to provide if called to the stand. If there were any evidence that these two witnesses were not credible or even that Mr. Berry had expressed doubts about their credibility that Mr. Wheeler ignored, then Mr. Berry might have had an argument that Mr. Wheeler's belief about the strength of the government's case was unreasonable. Absent such evidence, however, we conclude that Mr. Berry has failed to show that Mr. Wheeler's conflict adversely affected his representation during sentencing.

III.

In sum, we believe that Mr. Wheeler's conflict of interests did not adversely affect the adequacy of his representation of Mr. Berry. We therefore affirm the district court's order denying the motion to vacate Mr. Berry's conviction and sentence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.